Mr. Davis. Good morning, Your Honor. Good morning. Mr. Schilling, Jr. v. Schmidt Baking Company, Inc. I'm here today with Robert Laughlin. He's a co-counsel to the matter of Nathan Price. Good morning, Your Honor. Glad to have you. We are here to correct the error of the District Court committed when it granted Appellee 12B6's motion to dismiss. Of primary importance is whether appellants are covered in FOIAs, as that term is defined by the Technical Corrections Act of 2008. For decades, when employers such as appellants worked on both smaller and larger vehicles, meaning vehicles that weighed both in excess of 10,000 pounds and under 10,000 pounds, they were not subject to overtime. This is directly because of the Motor Carrier Act exemption. However, a lot of things changed in 2008. One of the biggest changes is that on June 6, 2008, Congress enacted the Technical Corrections Act. Counsel, so you are conceding that before 2008, these employees would have been covered by the NCAA exemption because they worked on a mixed fleet? Appellants believe that is unquestionable. With years of case law, they were definitely, definitely covered because of a mixed fleet. And the only thing that changed in June 6, 2008 is when they had that statutory amendment on order for persons such as appellants to be entitled to overtime compensation. And with that, it says the Fair Labor Standards Act was extended exactly to protect employees such as appellants. And this was regardless of the Motor Carrier Act exemption. The TCA makes clear that the overtime requirements shall apply to those that are covered. A covered employee is one whose work in whole or in part is that of a driver, helper, loader, or mechanic that performs work on vehicles weighing less than 10,000 pounds. Based on this, it is clear that appellants have stated a claim for relief. The appellants were delivery drivers. With this, they used their personal vehicles to make their deliveries approximately 70% to 90% of the time. Counsel, under your theory of the case here, interpreting the 2008 enactment, how much of a plaintiff's work time must be spent on these smaller vehicles, smaller being less than 10,000 pounds, in order for the overtime provisions to apply? No court has given an exact percentage, but I believe what's most important for this court to consider is that the direct opinion from the Third Circuit, and that is the matter of McMaster's versus Eastern Armored Services. That's the only published opinion for the Court of Appeals that has directly addressed the issue. And in McMaster's, the facts were 50-50. To be exact, the plaintiff spent approximately 51% of her time operating larger vehicles. The remaining 49% she spent operating vehicles that weighed less than 10,000 pounds. So what's Mr. Schilling's, what's his percentage in this case? They're all between 70% and 90%. So comparing operating smaller vehicles. So comparing that to the circumstances of McMaster's, it's crystal clear, as appellants believe, that they have stated a claim. Keep in mind the Third Circuit stated specifically that they do not even need to define exactly what in part means. So is that your position today, that because the record shows 70% to 90% operation of small vehicles, that that is certainly well beyond the McMaster threshold? So we, like the Third Circuit, we just simply don't have to address the meaning in that language? That is correct, Your Honor. We believe we've definitely met that requirement. And I think it's important to really focus on the Third Circuit's opinion. With the statutory language, when they expressly read into statute, and it says clearly. So whatever in part means, you're good with it? Yes. In this case, under these facts. Oh, definitely under these facts. But given the sort of statutory context here, don't we sort of know what in part means? Haven't the courts been construing in part for years and years and years under this statutory regime and saying it means anything but de minimis? How could we invent a new meaning for it now? It has to mean anything but de minimis, doesn't it? That's what it means they applied this language to decide the mixed duties cases. That is correct. But keep in mind, before the TCA was enacted, it was a little different, only because there was the de minimis standard that the appellees relied on. They're going to come and talk about the de minimis standard and say that's still good law. However, based on how the courts have turned when interpreting specifically the in part language, they now have to use in part to interpret the TCA to see how much time they operate on smaller vehicles. And with the in part language, the focus should be the time that appellants spend on smaller vehicles. Let me ask you, because I'm just trying to make sense of this. I'm finding it kind of makes my head spin. But isn't the more natural reading of this, or tell me why this is not right, that the natural reading of this Corrections Act note is that what Congress was trying to do was it had made this change, small vehicles were going back to Department of Transportation jurisdictionally. It understood that in 2005 it had suddenly given one category of people overtime protection and it wanted to maintain that status quo as to those people, people who had become eligible for overtime protection in 2005 because the only reason they would have been exempt is that they were driving small vehicles. None of those people are your clients because we've agreed. Your clients were not eligible for overtime before 2008. Congress wanted that group of people to maintain their overtime benefits. Why is that not the more natural reading of what happened here? That's not the more natural reading because you really look at the language of the statute. I am looking at the language and it uses the same language that Congress and the regulations have used over and over again to refer to mixed duties employees. So I look at this and I say they're saying people who drive small vehicles as part of their job, they may do some clerical work on the outside, but if they drive small vehicles as part of their job, that's the covered group. Looking at the statutory language and how courts interpret that covered group, when you look at the term in part, they all say that the statutory construction, with that they want to expand the scope of the Federal Labor Standards Act so persons that were not entitled to overtime before now fall under that class. So the way it works, and I'm sorry I will let this go, but I really am trying to, just as a matter of common sense, so an employee with mixed duties, say an employee who spends 90% of his time driving a large truck and 10% of his time doing clerical work, that person is going to be covered today by the MCA exemption. Correct. But if he spends 90% of his time driving a big truck and 10% of his time driving a car, that's suddenly going to make him eligible for overtime because he spends more time driving on the road in a safety implicated task. That takes him out of the motor carrier exemption because he drives more and puts him under overtime. Why does that make any sense at all? That makes sense, Your Honor, because at the time the 2008 amendment was enacted, they wanted to give protections to persons that were not covered. So looking at the statutory language, I can read from the quote. But what is so magic about driving a small vehicle that even if you mostly drive a big vehicle so that you are clearly under the MCA exemption for all of the 90% of your time that's driving a big vehicle, if you spend the other 10% of your time tightening, you don't get overtime. But if they can get you into a car for the other 10% of your time, poof, you get overtime. Why would Congress think the one group of people we want to make sure get overtime are people who drive small vehicles? Not the typists, just the drivers. I believe that Congress in that particular situation went to a vision to protect those employees because after 2005, keep in mind they only limited to one particular class that included commercial vehicles. However, when they took out the term commercial vehicles, they applied to all motor carriers. And with that, that's when the 2008 enactment went on. And from there, that's why it held that. We agree, right, that these employees were not covered between 2005 and 2008 by overtime. Yes. Okay. And I believe that the way many of the courts have interpreted this, if you look at what McMaster specifically said, again, the only court from the Court of Appeals, it says it need not fix a firm meaning of the term in part. But whatever in part means, it is certainly satisfied by the plaintiff who spent 49% of her days on vehicles that weigh less than 10,000 pounds. So that interpretation would cover your clients. As far as you're concerned, that's good enough for today. Yes. And with that, I believe it's really, really important for this court to also look at the matter of Reedburg v. Flowers, Jameson Company, LLC. And keep in mind, that's a matter from the Western District of North Carolina that was decided in 2016. With this, the facts are almost identical to the present matter. They all were delivery drivers. They drove Isuzu box trucks. And keep in mind, they drove their Isuzu box trucks for the majority of their time. The time that they spent driving smaller vehicles was just a small, small percentage. Even with this, the court really focused on the Court of Appeals' opinion. And with that, decided based on the plain statutory language that those employees were entitled to overtime. Mr. Davis, does the Maryland wage and hour law have a parallel exemption? They do not. Okay. So what does – how does that bear on your analysis? That bears on my analysis with the fact that even though they do not have a parallel exemption, as this court is well aware, whether a plaintiff's claims stand or fall depends on their Fair Labor Standards Act claims. So you're saying it has no bearing on the outcome? I believe it has a bearing on the outcome, meaning that the fact that how the outcome of the Fair Labor Standards Act claim developed will also center on how the Maryland wage and hour law case. Okay. You're saying the absence of an exemption in the Maryland wage and hour law, you're saying makes no difference in terms of coverage in this case? Yes. Okay. But you have two separate claims, am I right? You have an FSLA claim and then you have a Maryland state claim, is that right? You have two separate claims? That is correct. All right. And so what did the district court do with your Maryland state claim? They were all dismissed. So if you were to prevail on the FSLA claim, tell me what that does to your Maryland claim, if anything. It is based on that as was consistent with this court. Because the provisions of the Maryland wage and hour law closely track those of the FSA, an employee's Maryland wage and hour law claim will stand or fall on the success of his or her. But I thought you said they don't. I thought your first answer to Judge Keenan was they don't actually track each other with respect. There is no. Oh, there's no specific exemption specific to the Maryland wage and hour law. Right. So they don't track the federal law in this sense. No, they do not. I don't understand why. I don't see why. So in this case, the fact if you win under the FLSA, it doesn't necessarily mean you win under the Maryland law because the Maryland law doesn't have the provision on which you're relying, right? Yes, that is correct. But just how this court and others have ruled, you know, whether or not the FSA claim stands depends a lot. Does the Maryland overtime statute have an equivalent exemption related to the Motor Carrier Act? Yes, they do. But does it have a provision like the one in the Corrections Act? No, it does not. And that's the provision you're relying on here under the FLSA? Yes. Okay. And basically with that, I believe that it's crystal clear based on the opinion of the Third Circuit and what many other courts have decided. And keep in mind what these other courts have decided represents the majority opinion. It's crystal clear that the law has changed. When Congress enacted the Technical Corrections Act, it was based on factual circumstances that were specific to appellants. This was the vision that they wanted. And based on this vision, appellants' right to proceed is undeniable. Thank you. We've got some rebuttal time left. Mr. Krause? Good morning, Your Honors. I'm Anthony Krause, representing the Appellee Schmidt Baking Company, and I'm joined at council table by my partner Kathleen Pontone. The narrow issue before the court is whether the Technical Corrections Act saves plaintiff's overtime claims for driving mixed-weight vehicles from preclusion by the Motor Carrier Act exemption, which plaintiffs concede, and I think Mr. Davis just conceded before the court, would otherwise be barred by those claims. To frame the issue, how the parties' views on the TCA differ can be illustrated by considering two different drivers. One driver drives an over-10,000-pound truck, interstate, four days a week, 11 hours a day, and then takes the fifth day off. Under both parties' interpretation, that driver would not get overtime because of the MCA exemption, which, for safety's sakes, makes drivers of heavier vehicles solely subject to Department of Transportation regulation and not subject to the FLSA. Consider, in contrast, another driver who drives exactly the same weight truck, interstate, four days a week, 11 hours a day. But on the fifth day, instead of taking it off, he drives a lighter truck for some part of that day. Despite the two drivers presenting identical safety profiles and risks from driving the heavier vehicles the same amount of time, the plaintiff's interpretation of the TCA would result in the second driver being regulated by the Department of Labor and getting overtime because of partially driving the lighter truck the fifth day. The safety concerns causing the overtime for the first driver would somehow vanish for the second driver, despite driving that heavier, dangerous truck the same amount. These are all statutory constructs. Yes, Your Honor. It's true. So if Congress chose to cover the individual in your second scenario, they certainly have the authority to do that. They don't necessarily have to make sense to the wider world, but if that's what they wrote in the statute, isn't that the end of it? Your Honor, the question is, what does the statute mean? We think the statute is ambiguous in a couple of different ways, and by virtue of that, the Court then is open to considering all sorts of extra-textual evidence with respect to what the statute means, including whether it's rational to construe it in the way that the plaintiffs do or not. So is it your position, then, Mr. Krause, that employees working in mixed fleets are never covered employees? There may be. Yes, employees have to be working on the lighter vehicles all of the time, according to our opinion. There may be some slight margin. What does stolen in part mean, then, if they have to be working on it on the smaller vehicles all of the time? Your Honor, the question is, how far down subpart B of the statute does that whole or in part language refer? That's one of the ambiguities in the statute, and we cite the statute on page 25. It's helpful if you're looking actually at the text to follow all this. But subpart B says, as affecting the safety of operations of motor vehicles weighing 10,000 pounds or less, one interpretation of the whole or in part would be as affecting in whole or in part the safety of operation of motor vehicles in whole or in part weighing 10,000 pounds or less. Of course, that's not what the statute says. It only has the whole or in part language up at the top. Or the other interpretation that we propose is reading B to mean affecting in whole or in part the safety of operations of motor vehicles wholly weighing 10,000 pounds or less. There are two separate components to subpart B. Has this added language to the statute? Your Honor, we clarified one possibility of what the participle weighing 10,000 pounds or less could mean because it isn't specifically modified by the whole or in part language. It weighs 10,000 pounds or less. That's true. I don't understand what you think the ambiguity is here. Your Honor, the question is how far down subpart B does in whole or in part go? Does it reach that 10,000 pounds or less? And if it doesn't reach it, it has the effect of being what I just said was the interpretation of the statute, namely that 10,000 pounds or less means whole rather than in part. So your view of in whole or in part is that it applies only to 2A? No. It applies to 2A, and its application to 2A is clear. There are four functions referred to in A, being a driver, a driver's helper, a loader, or a mechanic, and one can do that in whole or in part and that gets you partway toward being subject to the exception. The issue in B is that there are two different participial phrases in B, and the question is how far down B the whole or in part language goes. Does it simply stop with in whole or in part as affecting the safety of operation of motor vehicles as a stand-alone concept? And under the regulations and the cases up until the Technical Correction Act was passed, that was a stand-alone concept that's quite common. And there is a particular canon of statutory construction, which we cite out of Justice Scalia's book, which is the nearest reasonable reference canon. Justice Scalia said that in a situation where you've got introductory language that modifies later language, if you've got a collection of nouns or verbs, you can infer that that introductory language modifies the nouns or verbs as a collection. But if not, you stop with the nearest reasonable reference, which we think is as affecting the safety of operation of motor vehicles and not going on to the weighing 10,000 pounds or less. So is the in whole or in part for some reason, notwithstanding Justice Scalia, does not apply to the weighing 10,000 pounds or less. That's correct. And we also think that that is reinforced. Before you move on, your first answer to Judge Keenan, I think, was that covered employees means only people who work entirely on small vehicles. That's correct. What if they work partly with a small vehicle and part of their duties are clerical? What if it's a mixed duties job? So they work half time driving a little van and half time doing clerical work. They would be covered employees, right? Yes, I believe it would be. Okay. Isn't it possible that the use of the language, that in part or in full, whatever exactly it was, is trying to capture that mixed duty thing? Your Honor, it does by Section A. That has the possibility of job. That addresses job functions and the kind of concerns that Your Honor was just talking about, being a clerical part time or not. It's B where the ambiguity really arises and has its greatest effect. The question again is what does weighing 10,000 pounds or less, the exclusively driving those trucks to the extent that one is driving trucks. If we read B and we don't see any ambiguity, do you lose? No, Your Honor, because we think 3 also adds ambiguity to the statute on its own, but we think it also reinforces the ambiguity we're seeing in Part B. You'll notice 306C3 refers to another job aspect that needs to be present for purposes of being accepted from the exclusion, and that's performing duties on motor vehicles weighing 10,000 pounds or less, and that the whole or in part language in Subpart 2 that begins all this does not apply to 3. It does not carry down to 3, which implies to us that Part 3 refers to performing duties exclusively on motor vehicles weighing 10,000 pounds or less because the whole or in part language doesn't carry down to it, and that reinforces our reading of Part B. So we are reading exclusively into Sub 3 under your theory. That's correct. Who performs duties exclusively on motor vehicles. Because the whole or in part concept isn't taken down into it. Whole or in part stops Part 2, and that again reinforces our construction of Part B and stopping the application of whole or in part simply to affecting the safety of operations of motor vehicles and not carrying it down to weighing 10,000 pounds or less. Our interpretation, we think, is supportive. So in your view, we start with the premise that before 2008, employees such as the plaintiffs in this case would have been excluded from FSLA coverage. That's correct. I think appellants have agreed that that was the case. What was the purpose of the 2008 legislation? In 2005, the Secretary of Transportation's jurisdiction over trucking had been limited to commercial vehicles, which were vehicles 10,000 pounds or over, 10,001 pounds and over. Congress realized that that was problematical for various reasons and restored the Secretary of Transportation's jurisdiction to all motor vehicles, irrespective of weight, in the 2008 legislation. And that, we think, was a critical portion of it. Now, there were other things that were involved in that 2008 legislation. It's complicated and deals with construction projects and many other things. But that's what we think they were concerned about. To the extent that vehicle weight was added as a consideration at all in 2005, we think that Congress meant to simply reincorporate the status quo with respect to vehicle weight in the 2008 legislation and to make it exclusively driving trucks 10,000 pounds or less for escaping the Motor Carrier Act exemption. So under your view, I take it you would say that the McMaster's decision from the Third Circuit is incorrectly decided? Yes, Your Honor, for a couple of reasons. Not only does it not do, we think, as searching and analysis of the language of the statute as it should have, but because it avoided determining the issue that Your Honors were asking my colleague about, and that is what does the whole or in part mean in the statute? If in part means very small, that raises the problems that Judge Harris was raising with respect to what sense does this make? Why should that impact the safety considerations that would otherwise apply to somebody who is impartially driving heavier trucks? And because that's a problem, it was frankly a cop-out for the Third Circuit to not address what in part means and to realize it can mean very small, which raises problems for their interpretation. Part, as used in the statute, isn't simply used on its own. It's used in a comprehensive phrase, in whole or in part. In whole or in part means encompassing all of the possibilities, all of the quantitative possibilities, so that part has to mean anything that's less than the whole. Okay, but your interpretation is contrary to the Department of Labor's wage and hour division interpretation of the statute, isn't it? Your Honor, there are two bulletins for fuel workers. And I'm referring to November 4th, 2010. Isn't their interpretation directly contrary to yours? It is, Your Honor, but their interpretations, again, that's true, and this Court has been very cautious with respect to following Department of Labor interpretations in this area, and in particular, Judge Dianamant's opinion. Well, there's no question we don't have to follow it. But it's critical to understand that the reason for that is because there is another agency and another statute with its own remedial purposes in the picture here, unlike the situation with other exclusions in the Fair Labor Standards Act, which is why we think those two interpretations are entitled to no deference at all. And on top of that, all they do is announce their result. They don't analyze the cases. And even under Skidmore-type deference, there's no basis for following them, no justification or explanation of the rationale. You're saying they're not persuasive. Yes. As I said, it simply upsets it. It doesn't analyze the question. There's no grammatical or logical rule requiring that second participial phrase in Section B from necessarily being modified or having the whole or in part language apply to it. For example, if the statute read, as affecting the safety of operation of motor vehicles, bearing a number from the Department of Transportation, I don't think any of us would say in whole or in part would apply to bearing a number because it either has it or it doesn't. My point here is simply there's nothing about the grammar or the logic of the layout of the statute, which is inconsistent with our reading that says that in whole or in part only refers to the first participial phrase and not the second. What cases have interpreted the 2008 enactment as you present it? Cases that have come to the general conclusion, the common sense view of our interpretation, have included two decisions by Judge Motz. The principal decision is by Judge Deborah Chazanel in Avery v. Chariots of Fire, and then there's the Buckner decision. And that was applying the 2008 act? Yes, all of those were. And the Buckner decision was a North Carolina decision that was affirmed without a published opinion by a panel of this court. Another strand of authority that supports our view of Subpart B of the statute are various mens rea cases concerning criminal statutes that interpret the word knowingly as a prefatory concept, several of which do not carry that prefatory knowingly down the whole predicate of the statute, particularly with respect to things like minors' ages, if that's an element of the statute, because of congressional concern for protecting minors and not making that a mens rea requirement of the statute. We think in the same way in this case. The longstanding congressional concern not to have employees jointly subject to the regulation of the Department of Labor with respect to overtime and the Department of Transportation with respect to hours likewise requires not reading the whole or in part prefatory language as reaching the weighing 10,000 pounds or less language and effectively gutting the Motor Carrier Act exemption. There is no issue of material fact that precludes the affirmance of the judgment below based either on the motion to dismiss that Judge Motz actually granted or based alternatively on the motion for summary judgment that we added as an alternative. Judge Chazana sums up the de minimis level test for driving sufficient amount to justify Motor Carrier Act exemption. Okay, but you're saying there isn't a de minimis test. Yes. You're saying they're never covered. We are saying, well, they're never covered. That's correct, but if you're in a mixed fleet situation, if a driver drives heavier trucks at all over a de minimis level, that still continues to justify application of the Motor Carrier Act exemption to him. So you're flipping the de minimis analysis that was used by the Third Circuit. That's right. In McMaster's, and you're saying that the minimis applies to the driver, the larger vehicle. It goes the other way, and I think as Judge Harris was referring to earlier, it makes sense to be carrying over that kind of test from regulations dealing with mixed activities as Judge Chazano did at the top of page 500 of her opinion in Avery. She used Department of Labor regulations at 29 CFR 782.2B3 to suggest that if a driver is simply subject to being called upon on any given day to drive a heavier truck, that's enough. We think that is the test, and that also is consistent with Department of Transportation regulations at 46 Federal Register 37902-02. To the extent that the plaintiffs assert Maryland case law claims, we think the dismissal of them is also required because there is no Technical Corrections Act equivalent, as was conceded by my friend in his opening argument. They have submitted to the court the case of Hill v. Frank Joy in the last week, in which a district judge in our court came to precisely that conclusion and dismissed claims that asserted a Maryland Wage Act basis for the claims because the Technical Correction Act wasn't included in that statute, and the Motor Carrier Act exemption applied under the historical interpretation of its operation. In summation, the Technical Correction Act is more complicated in the expression of its intent than the cases to date we think have addressed, and we believe that when it is addressed, the conclusions reached by Judges Chazano and Motz and other judges in the circuit about what interpretation makes the most practical sense is fully supported. And we submit in this context, erring on the side of trucker safety, as Congress has done historically in this area, rather than on the side of premium pay for managers, is the wisest of these two courses. Your Honor, that concludes my remarks. I wish the court has any other questions. Thank you very much. Thank you, Mr. Davis. You have some rebuttal time left. Thank you. Listen clearly to what the appellee had to resort to. We think this is the test. This is the possibility. Look what sources that he was forced to rely on, ones discussing reference, tenets of grammar, their own opinion. A lot of very solid district courts, right? Let's not be too cavalier about that. And I do not believe that the district court is the primary case that he relies on is Avery v. Chariot for hire. And keep in mind, those facts are not remotely similar to the present matter. In Avery, in that case, keep in mind that there was 28 vehicles in that fleet. Out of that 28 vehicles, the appellant failed to allege that he ever drove one of the qualifying vehicles that would have entitled him to overtime. Therefore, he failed to allege altogether. I read that opinion. The district court actually addresses this very issue, and it comes out the other way. It says mixed fleet drivers stay subject to the MCA exemption, and they don't get overtime. But based on that, with that fact, I still believe it's incredibly important to point out the fact that the There may be a way to distinguish it on the facts, but all I'm saying is that it's not really resorting to some crazy source when you can cite a very solid district court analysis that address this very issue and come out the same way as the companies. But you just wanted to say that's wrong, cases are wrong, which is fine. And, Honorable Judge Harris, I believe it's really important to know, if you look at the dicta in Avery, and in that, the court specifically states, this case does not present a situation where the use of a qualified commercial motor vehicle was so limited. However, and thus, it is not necessary to decide where the line must be drawn. But is your argument in this case that the use of heavy vehicles here was de minimis? The argument in this case is that the use of heavy vehicles was not de minimis at all. So they used heavy vehicles more than a de minimis amount. Meaning that we don't have to define the de minimis standard based on the clear language of the Technical Corrections Act because they used their smaller vehicles in part. Meaning 70 to 90% of the time, what qualifies for in part, they definitely satisfy the statutory requirements. And I believe another case that they heavily rely on is the matter of Buckner v. UPS. And I believe that's another situation that's highly distinguishable from this matter from a clear factual standpoint. In Buckner, keep in mind, it was a pro se plaintiff. He failed to allege that he himself ever drove any of the qualifying vehicles. Keep in mind, his only argument centered on the fact that his co-workers, not himself, ever drove a vehicle that weighed less than 10,000 pounds. Based on those facts, that's why his claim for overtime was rejected. And also it's important... Your theory of the case, as I understand it, flips this de minimis paradigm. As you look at it, if the driver drives smaller vehicles, more than the de minimis amount, then that person is covered under the 2008 enactment. That is correct, Your Honor. And that is the majority precedent. Numerous district courts have held that. The Third Circuit has held that. I believe there's absolutely nothing ambiguous about the language. We look at all the cases cited. I fully brief these cases in my memorandum. And all those cases have a clear interpretation of how the TCA has to be interpreted. And with all respect to appellees, look at the sources that some of them had to rely on. They had to do with the drug trafficking statute. They had to do with the statute concerning protecting minors from prostitution. Look at their supplemental authorities. They had to rely on a statute report regarding World War II reparations. Instead of looking at the case law, the case law makes crystal clear that after 2008, appellants are entitled to overtime. The appellee's inability to accept the law has changed, does not validate a valid defense in this matter. And, therefore, the district court's opinion must be reversed. Thank you. Thank you very much. We're going to take a very brief recess after we come down and greet counsel, and then we'll go on to our last.
judges: G. Steven Agee, Barbara Milano Keenan, Pamela A. Harris